Leland BLAIR et al.

v.

STATE of Tennessee ex rel.
Frank Watts et al.

Supreme Court of Tennessee.

Sept. 19, 1977.

William S. Fleming, Courtney & Fleming, Columbia, for appellants.

John W. Steenbergen, III, Sanders & Steenbergen, Columbia, for appellees.

FONES, Justice.

## OPINION

Defendants appeal from the action of the trial court in issuing a peremptory writ of mandamus directing the City Manager of Columbia to appoint as Assistant Chief of Police one of three candidates originally certified to him by the Civil Service Board as having the highest rating. After one of those three withdrew, the Board certified two additional candidates and the City Manager appointed one of them.

The controlling issue is whether the Charter provisions make it mandatory that the appointment be made from the three persons first certified.

The Assistant Chief of Police of Columbia was promoted and the City Manager notified the Civil Service Board that a vacancy existed in that position. There were seven (7) applicants for the position. Examinations were conducted and Pat Troope, Jack Thomason and Albert Lentz, having made the highest scores were certified to the City Manager, Barry Jones, as the eligibles from which to make the appointment. Prior to any further action, Pat Troope advised Mr. Jones, by letter, that he did not wish to be considered for the position.

Mr. Jones advised the Board of this development and requested a third candidate. The Board thereafter certified two (2) additional names, Frank Duncan and Ed Dooley, because they had made identical scores on the examination. Mr. Jones appointed Frank Duncan, which act precipitated the bringing of this lawsuit.

The learned trial judge held that it was mandatory that the Civil Service Board certify to the City Manager the three (3) persons with the highest rating; that the only discretion in the City Manager was to appoint one of the three certified to him in accord with Section 6.10 of the City of Columbia Charter.[1] In issuing the peremptory writ of mandamus, the trial court directed that the civil service board withdraw the certification of Duncan and Dooley, that the City Manager set aside the appointment of Duncan and make the appointment from the list of the three (3) persons originally certified by the Civil Service Board.

■ First we will dispose of defendants' assignment of error questioning the standing of the parties plaintiff to bring this action.

The original plaintiff was Frank Watts, a member of the Police force of the City of Columbia who was eligible to compete in the examinations for the eligible list from which the appointment would be made, but he did not elect to be an applicant. Later, Jack Thomason and Albert Lentz moved the Court for leave to join Watts as parties plaintiff. The Court granted the motion, over objection of defendants, and the complaint was duly amended to include Thomason and Lentz as parties plaintiff.

We pretermit any consideration of Watts' standing to bring the suit, because that issue is moot. Thomason and Lentz, as two of the three officers originally certified to the Board as eligible for the position of Assistant Chief of Police have a special interest in this litigation and are subject to a special injury not common to the public generally. See *Sachs v. Shelby County*

---

1. The pertinent part of the Charter provision reads as follows:

SECTION 6.10: Other than as provided in Section 6.11, every Civil Service position as herein defined unless filled by promotion, reinstatement, or reduction shall be filled in the following manner:

The City Manager shall notify the Civil Service Board in writing of any vacancy in the service which he desires to fill, and shall request a certification of eligibles. The Board shall forthwith certify from the appropriate eligible list the names of the three persons thereon who bear the highest rating under the regulations and examinations prescribed by the Board. The City Manager shall thereupon make the desired appointment from said eligible list so certified to him or it. . . .

*Election Commission,* 525 S.W.2d 672 (Tenn. 1975) and *Bennett v. Stutts,* 521 S.W.2d 575 (Tenn.1975). Either of these plaintiffs, or both of them, clearly have standing to bring this action and the issues for adjudication are the same whether pursued by Watts, Thomason and Lentz, or only by Thomason and Lentz.

▇▇▇ Defendants also assert infirmity of the action brought by plaintiff because it was not supported by affidavit, relying upon T.C.A. § 23–2001. This code section merely states that circuit judges and chancellors have power to issue writs of mandamus upon petition or bill, supported by affidavit. At the time this section was originally enacted, 1858, the term "affidavit" was used interchangeably with "sworn petition." The intent of the statute is simply that the facts alleged in a bill or petition for the writ of mandamus be supported by oath or affidavit. Cf. *Whitesides v. Stuart,* 91 Tenn. 710 at 714, 20 S.W. 245 (1892). The original complaint was sworn to by Frank Watts and the amended complaint was sworn to by Watts, Thomason and Lentz. This assignment of error must be overruled.

▇▇▇ Defendants insist that the trial court was in error because mandamus is not available to review discretionary acts of public officials and that the Civil Service Board was performing a discretionary act in certifying individuals for appointment under the requirements of the City of Columbia Charter. Defendants reason that under the Charter the City Manager was entitled to have three (3) persons certified as eligibles for appointment, that the withdrawal of Troope leaving only two (2) persons for consideration created a situation not explicitly covered by the Charter, but calling for a discretionary interpretation by the City Manager and the Civil Service Board which they made correctly. It follows, insist defendants, that the certification of Duncan and Dooley and the appointment of Duncan carries out the meaning and intent of Section 6.10 of the Charter and that action, being discretionary, is not reviewable in a mandamus suit.

In *Bradley v. State ex rel. Haggard,* 222 Tenn. 535, 438 S.W.2d 738 (1969), plaintiff sought a writ of mandamus ordering the Hamblen County Quarterly Court to reapportion itself. Defendants asserted that redistricting would require the exercise of discretion by the members of the Quarterly Court and therefore could not be compelled by mandamus. Holding that argument invalid the Court said:

"Regardless of the amount of judgment involved in redistricting, the decision whether or not to redistrict is not discretionary with the Quarterly Court. In the legal sense an act is discretionary when an official has the lawful authority to determine of his own will whether or not he will perform the act. When the performance of an act is discretionary in the sense referred to above the only legal duty of the official is to exercise his discretion which he can do by either performing or declining to perform the act. When the performance of an act is truly discretionary, a writ of mandamus can only compel the official to exercise his discretion one way or another, it cannot dictate how the discretion is to be exercised.

Whether mandamus can be used to compel the Hamblen County Quarterly Court to reapportion itself depends on whether the members of the court have a legal duty to reapportion. The object of a writ of mandamus is to compel an official to perform an act which he has a legal duty to perform. When the details of performance require a public official to exercise judgment he may be compelled by mandamus to perform the duty but his judgment concerning the details of performance is left unfettered.

Clearly, the *Avery* case, supra [*Avery v. Midland County, Texas,* 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45], imposes a duty on the Hamblen County Quarterly Court to reapportion itself if the plaintiffs' allegations are correct. Reapportionment is not discretionary with the court members although they will be required to use their own judgment to work

out the new district boundaries. Mandamus is the proper method to compel the magistrates to perform their constitutional duty to reapportion the Quarterly Court on a one man one vote basis." 438 S.W.2d at 740.

Applying these principles to the instant case, we are of the opinion that no discretion exists in the Civil Service Board in regard to certifying the names of "the three persons who bear the highest rating under the regulations and examinations prescribed by the Board." It is also mandatory that the City Manager "make the desired appointment from the eligible list so certified to him."

Under other sections of Article 6 of the City of Columbia Charter the Civil Service Board shall prescribe qualifications of applicants and they clearly have discretion with respect to the scope and content of the examinations to be given, but when the grades are determined they have no choice but to certify the names of the three persons having the highest marks.

The fact that the City Manager has the discretion to appoint one of the three persons certified to him does not affect the mandate that he must appoint one of those three persons.

The Court's opinion in *State ex rel. Atkin v. City of Knoxville*, 203 Tenn. 622, 315 S.W.2d 115 (1958) contains several quotes from McQuillin on Municipal Corporations, Third Edition, Volume Three, Section 12.80, which were approved and applied in that case. Two of the quotes are as follows:

" 'A valid appointment can only be made *by due observation of the civil service rules*, and must be made from the appropriate eligible list.' "
315 S.W.2d at 116.

" 'The methods prescribed by charter for the making of appointments in the civil service are mandatory and controlling.' *Campbell v. Board of Civil Service Com'rs of City of Los Angeles*, 76 Cal. App.2d 399, 173 P.2d 58."
315 S.W.2d at 116.

This action seeks only to enforce the mandatory aspect of the Charter requiring that the City Manager must appoint one of the three eligibles certified to him. We must therefore respectfully overrule the assignments of error challenging as defective the form of action selected by plaintiffs.

■ The question presented by Troope's withdrawal, after certification of the three persons with the highest rating and prior to the making of the appointment presents a separate significant question, in our opinion, which the parties have only addressed obliquely. We have researched this question and find that the few reported cases from our sister states that involve analogous factual situations have been resolved by resort to explicit or implicit language in the applicable municipal charter or the regulations of the Civil Service Board. Here the Charter is silent and insofar as the record discloses, the Civil Service Board has no rule or regulation applicable to withdrawal, death, or any other incapacity of one or more of the three certified eligibles, during the interval of time involved here.

*Gottlieb v. Kryzan*, 80 Ohio Law Abst. 183, 157 N.E.2d 886 (Ct.App.1958), involved facts similar in some respects to the instant case. The Mayor of Youngstown, Ohio, was the appointing authority and the position involved was Manager of the Municipal Airport. The first examination produced only two persons with passing grades and the Mayor refused to make the appointment on the ground that the Charter required the Civil Service Board to certify three names. A second examination was given and one Scheetz, who held the interim appointment, stood sixth of eight candidates. The Civil Service Board certified to the Mayor the names of the three candidates having the highest grade, as mandated by the Charter. The trial court found from the evidence adduced that the Mayor, by persuasion, political influence, and coercion had induced candidates ranking first, second, fourth and fifth to "waive appointment" leaving only number three, one Magrini ahead of Scheetz. The Mayor refused to appoint Magrini, again because he did not have three candidates, and called upon the Civil

Service Board to certify three names with the obvious expectation that Scheetz would be among the three. Scheetz was appointed and suit was brought to invalidate the appointment and restrain payment of any further salary to Scheetz. The court decided it was not necessary to determine whether or not the action of the Mayor in inducing withdrawals from the first list made it necessary to appoint Magrini. The affirmative holding of the Court was "that the Mayor was bound to make an appointment from the list first certified to him and that he had neither the right to request nor to appoint from a second list. His appointment of Scheetz was therefore invalid."

It is implicit in the decision of the Ohio Court that the Youngstown City Charter, like the Columbia Charter, was silent with respect to withdrawal, death or other incapacity of a candidate between certification and appointment.

In this case, the witnesses denied knowledge of any pressure exerted upon Troope to withdraw. The record shows that he made the highest rating on the Civil Service Examinations but that he had a shorter period of service on the Columbia Police Force than the other candidates. No explanation for his decision to withdraw was offered in evidence. Under our decision Troope's letter does not eliminate him from eligibility for appointment.

Whatever may be the appropriate procedure to prevent or discourage politically motivated tampering with the three candidates certified for civil service appointments, this Court is without authority to supply the void in the Charter of the City of Columbia or the regulations of the Civil Service Board. That is a legislative function. We are restricted to enforcing the procedure that is expressly prescribed. The application of the Charter provisions of the City of Columbia to the facts in this case mandates that the City Manager appoint Pat Troope, Jack Thomason or Albert Lentz to the position of Assistant Chief of Police.

Under this record we are not called upon to break the tie between Duncan and Dooley. However, we think it appropriate to observe that the mandatory duty to certify three persons having the highest ratings will not tolerate the inclusion of four or more because of ties. Obviously, some further procedure must be provided to deal with that eventuality.

The decree of the trial court is affirmed and this cause is remanded for enforcement of the writ of mandamus. Costs are adjudged against defendants.

COOPER, C. J., and HENRY, BROCK and HARBISON, JJ., concur.